_____
Patrick M. Flatley
United States Bankruptcy Judge

Dated: Friday, April 26, 2013 2:52:07 PM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JOHN C. SCOTCHEL, JR., and ) | Case No. 1:12-bk-9 |
| HELEN H. SCOTCHEL, ) | |
| ) | |
| Debtors. ) | Chapter 7 |
| _____ ) | |

## MEMORANDUM OPINION

Pending before the court is Martin P. Sheehan's ("Trustee") objection to John and Helen Scotchel's ("Debtors") claim of exemptions. The Trustee seeks a declaration that Mr. Scotchel's $690,000 contingent fee award is property of his bankruptcy estate. The Debtors argue that none of the fee is property of their bankruptcy estate because Mr. Scotchel, an attorney, had no right to payment under the contingent fee contract when he filed bankruptcy. The issue before the court is whether any portion of a debtor-attorney's contingent fee is property of the bankruptcy estate when the underlying contingency occurred postpetition. For the reasons stated herein, the court finds that Mr. Scotchel's entire fee is property of his bankruptcy estate.

## BACKGROUND

On January 5, 2012, the Debtors filed their Chapter 7 petition. Before filing bankruptcy, Mr. Scotchel and the law firm of Bordas & Bordas, P.L.L.C., entered into a contingent fee contract with Cindy Jo Falls to prosecute a first-party bad faith action ("Falls Case"). Under the contract, the attorneys were to receive one-third of any recovery obtained if the case was settled before suit was filed, and 40% of any recovery obtained after suit was filed. Mr. Scotchel and Bordas & Bordas also entered into a referral agreement, whereby Bordas & Bordas were counsel of record and responsible for preparing the Falls Case. Pursuant to the referral, Mr. Scotchel was entitled to 40% of the total attorney fee received. In March 2012, after 11 years of litigation and

1

about three months after Mr. Scotchel filed bankruptcy, the Falls Case settled.[1]  Bordas & Bordas received the settlement payment and sent Mr. Scotchel's portion of the attorneys' fee, $690,000, to the Trustee.  The Trustee is currently holding Mr. Scotchel's fee in a trust account.

The genesis of this matter stems from the Trustee's objection to the Debtors' claimed exemptions.  As it pertains to the matter before the court, the Debtors sought to wholly exempt — exempt 100% of the fair market value — of Mr. Scotchel's fee from the Falls Case by listing it on Schedule C with a value of $1.00 for both the "value of claimed exemption" and "current value of property without deducting exemption."  This court sustained the Trustee's objection and found that the Debtors did not fully exempt Mr. Scotchel's fee.  *In re Scotchel*, No. 12-bk-9 (Bankr. N.D.W. Va. Oct. 16, 2012).  The court set an evidentiary hearing because the Debtors argued, in the alternative, that the fee was not property of the bankruptcy estate, and even if it was, a substantial portion should be excluded from the estate because Mr. Scotchel performed significant postpetition legal services.

During the evidentiary hearing, Christopher J. Regan, Esq., an attorney at Bordas & Bordas who was personally involved in the Falls Case, testified regarding Mr. Scotchel's involvement in the Falls Case. From the time the complaint was filed in September 2001 to January 2012, Mr. Regan testified that Mr. Scotchel provided facts about the underlying case and acted as a liaison with Ms. Falls.  Mr. Regan could not recall Mr. Scotchel taking any depositions or partaking in any of the state court proceedings.  From January 5, 2012 to March 2012, Mr. Regan testified that the Falls Case litigation entailed a mediation session in state court, a hearing on a motion for sanctions, and confidential settlement negotiations; he remarked that Mr. Scotchel was not involved in any of these proceedings and did not render any legal services in their preparation.  He further testified that during this time period, Mr. Scotchel was not asked to perform any legal services, and that he had "no personal knowledge of anything Mr. Scotchel did to advance the [Falls] case this year [2012]."

---

[1] The record is not entirely clear as to when the first settlement offer was made.  The Debtors initially stated that a "confidential offer was made on the date of debtors filing, which, post filing, was ultimately increased, on the verge of trial, and accepted." Doc. No. 68.  In another motion, the Debtors similarly stated that "[s]ometime in the afternoon" of January 5, 2012 Allstate made its first offer, which was rejected because it was not "close to being a recommended settlement."  Doc. No. 100.  But neither at the evidentiary hearing nor in the Debtors' Memorandum of Law in Support of Exclusion of Settlement Funds from the Bankruptcy Estate, do the Debtors allege that a settlement offer was made on January 5, 2012.

At the conclusion of the evidentiary hearing,[2] the court kept the record open for the limited purpose of resolving whether there was an extant settlement offer in the Falls Case on January 5, 2012, the terms of the referral between Bordas & Bordas and Mr. Scotchel, and to permit Mr. Scotchel more time to consider whether he would testify. On January 15, 2013, the court held a telephonic status conference. During the conference, the Debtors indicated that the only other evidence they planned to submit was an affidavit of James G. Bordas, Jr., a senior partner at Bordas & Bordas.

Mr. Bordas's affidavit provides details of the referral agreement and the duties of Mr. Scotchel throughout the Falls Case litigation. Mr. Bordas attested that Mr. Scotchel's duties included assisting attorneys at Bordas & Bordas with the historical facts regarding Ms. Falls; reviewing depositions and other documents; preparing to testify as a witness; and other attorney-client duties related to the Falls Case. The only postpetition service Mr. Bordas attested to was Mr. Scotchel making hotel reservations in Wheeling, West Virginia.

## DISCUSSION

The Trustee asserts that Mr. Scotchel held a legal interest in the Falls Case contingent fee contract when he filed bankruptcy such that the value of his prepetition services is property of the bankruptcy estate. Relying on *Metzner v. Metzner*, 191 S.E.2d 165 (W. Va. 1994), the Trustee argues that contingency fees should be divided between prepetition and postpetition legal services based on the theory of *quantum meruit*. The Trustee alleges, however, that Mr. Scotchel performed no postpetition legal services, and that therefore Mr. Scotchel's entire fee is property of his bankruptcy estate. The Trustee also invokes the court to consider equity: Mr. Scotchel litigated the Falls Case for over 11 years, racked up astounding debt, coincidentally filed for bankruptcy on the eve of a prodigious settlement, and now claims that his creditors deserve nothing because his contingent fee is indivisible.

In response, the Debtors argue that the Falls Case contingent fee contract had no value to Mr. Scotchel as of the petition date because the contingency — settlement — did not occur until three months after he filed bankruptcy. The Debtors emphasize that Mr. Scotchel's contingent fee agreement is an executory personal service contract which is neither assumable nor

---

[2] The only other testimony was from James M. Benninger, Esq. After *voir dire*, the court permitted Mr. Benninger to testify as a legal expert regarding the potential ethical violations in recreating time and billing records. Because the recreation of time records has no bearing on the court's disposition, the court declines to provide a recitation of his testimony.

assignable, and that it contained a condition precedent which had to occur before any entitlement to fees arose: The agreement states that Mr. Scotchel's fee "shall be contingent on what is recovered by this matter by way of settlement, judgment, or otherwise." The Debtors conclude that because this condition precedent — successful resolution of the Falls Case — did not occur until after January 5, 2012, the fee received postpetition is not property of their bankruptcy estate.

For purposes of burden of proof, the matter before the court qualifies as a turnover action under 11 U.S.C. § 542.[3] Although this action stems from the Trustee's objection to exemptions, the proceedings have transmogrified into a request by the Trustee for a declaration that Mr. Scotchel's fee, or a portion thereof, is property of the estate under 11 U.S.C. § 541. Consequently, the Trustee bears the burden to demonstrate that Mr. Scotchel's fee is property of the bankruptcy estate, and the value of Mr. Scotchel's prepetition legal services. *See Turner v. Avery (In re Avery)*, 947 F.2d 772, 774 (5th Cir. 1991); *Bailey v. Suhar (In re Bailey)*, 380 B.R. 486, 490 (B.A.P. 6th Cir. 2008).

The filing of a Chapter 7 petition creates a bankruptcy estate. 11 U.S.C. § 541(a)(1). Property of the estate includes "all legal or equitable interests . . . in property" held by the debtor "as of commencement of the case." *Id.* The phrase "legal or equitable interests" in property is broadly interpreted to include "every conceivable interest of the debtor, future, nonpossesssory, contingent, speculative, and derivative." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) (citation omitted). While § 541(a) provides what interests of the debtor become property of the estate, state law determines the existence and scope of the debtor's interest in a particular asset as of commencement of the case. *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."); *McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit)*, 217 F.3d 1072, 1078 (9th Cir. 2000).

Attorney-debtors have an interest in fees attributable to prepetition legal services rendered under a contingent fee contract even if the contingency occurs after the filing of their

---

[3] The problem, of course, with construing the current matter as a turnover action is that Mr. Scotchel's fee is already in possession of the Trustee. 11 U.S.C. § 542(a) ("[A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease . . . or that the debtor may exempt . . . , shall deliver to the trustee . . . ."). Nonetheless, the rest of his request resembles a turnover action: The Trustee seeks a finding that the fee is property of the estate; a portion of the fee is exemptible under § 522; and the fee is not of inconsequential value. *See* § 542(a).

4

bankruptcy petition. *E.g.*, *In re Carlson*, 263 F.3d 748, 750 (7th Cir. 2001) (Posner, J.); *Jess v. Carey (In re Jess)*, 169 F.3d 1204, 1207 (9th Cir. 1999); *In re Avery*, 947 F.2d at 774. Section 541(a) is written broadly to include "contingent future payments that were subject to a condition precedent on the date of bankruptcy." *In re Bagen*, 186 B.R. 824, 829 (Bankr. S.D.N.Y. 1995) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 175–76 (1977)), *aff'd*, 201 B.R. 642 (S.D.N.Y. 1996). The fundamental question is whether the debtor-attorney had any legal or equitable interest in the potential contingent fee at the time of petition. § 541(a). As Judge Posner noted in *In re Carlson*, a debtor-attorney has a "legally enforceable interest in a potential contingent fee . . . [because] if the client terminates his employment before judgment or settlement . . . and so before the lawyer receives any fee, he is entitled to the fair value of the services that he performed up to the termination." 263 F.3d at 750 (citations omitted). Although he was applying Illinois law, Judge Posner employed an important hypothetical legal fiction: Whether the contingent-fee attorney would be entitled to any compensation for services rendered if he were terminated before the contingent event occurs. If so, the fee attributable to those "pre-termination" legal services is property of the estate. *Id.* at 750. Many other courts also analogize the bankruptcy petition date as a hypothetical termination date. *See, e.g.*, *In re Avery*, 947 F.2d at 774; *Tishgart v. Hoffman (In re Tishgart)*, No. 09-13400, 2012 WL 5489034, at *8 (B.A.P. 9th Cir. Nov. 13, 2012).

Under West Virginia law, attorneys hired on a contingency fee basis are entitled to the reasonable value of their legal services if they are terminated before the contingency occurs. An attorney discharged by a client "without cause can recover on the contingent fee contract or in *quantum meruit*." *Kopelman and Associates, L.C. v. Collins*, 473 S.E.2d 910, 916-17 (W.Va. 1996); *see, e.g.*, *Statler v. Dodson*, 466 S.E.2d 497, 505 (W.Va. 1995); *Clayton v. Martin*, 151 S.E. 855, 856-57 (W.Va. 1930). And attorneys discharged with cause can recover in *quantum meruit* for the services rendered up until the time of termination. *Kopelman*, 473 S.E.2d at 917. Therefore, an attorney in West Virginia has an interest in a potential contingent fee at the time of termination.

Here, Mr. Scotchel held a legally enforceable interest in the Falls Case contingent fee contract when he filed for bankruptcy. Under West Virginia law, Mr. Scotchel would be entitled to receive the reasonable value of his services up until January 5, 2012. *See Kopelman and Associates, L.C.*, 473 S.E.2d at 917 ("We have long held a lawyer is entitled to the reasonable

value of his or her services."). Accordingly, the value of Mr. Scotchel's prepetition legal services is property of his bankruptcy estate. But before attempting to value Mr. Scotchel's prepetition legal services, the court must "first determine whether any postpetition services are necessary to obtaining the payments at issue. If not, the payments are entirely 'rooted in the pre-bankruptcy past,' and the payments will be included in the estate." *In re Jess*, 169 F.3d at 1208 (quoting *In re Wu*, 173 B.R. 411, 414-415 (B.A.P. 9th Cir. 1994)). Only if an attorney renders necessary postpetition services must the court value the extent of payments attributable between prepetition and postpetition services. *In re Jess*, 169 F.3d at 1208.

The court finds that Mr. Scotchel did not perform postpetition legal services that were necessary to obtain the contingent fee. By the time Mr. Scotchel filed bankruptcy, the Falls Case litigation had been ongoing for over 11 years, and by January 2012 the parties were the midst of settlement discussions. The parties ultimately settled just three months postpetition. Notably, Mr. Scotchel did not participate in any of the settlement negotiations, mediation sessions, legal proceedings, or aid Bordas & Bordas in legal preparations after he filed for bankruptcy. Because Mr. Scotchel did not perform any postpetition legal services,[4] the court finds that his fee of $690,000 is entirely rooted in his pre-bankruptcy past.

The Debtors deny that Mr. Scotchel held a legally enforceable right in the Falls Case contingent fee when he filed bankruptcy. Relying on *Sharp v. Dery*, 253 B.R. 204, 210 (E.D. Mich. 2000), the Debtors argue that Mr. Scotchel was not entitled to any fees for his legal services because his right to payment "vested" postpetition. In *Sharp*, the debtor filed his Chapter 7 petition on December 21, 1998; a few months later he received a bonus for his employment during 1998. 253 B.R. at 206. To qualify for the bonus, he had to be employed in good standing when the company issued the bonus checks. The employer had the sole discretion to amend, suspend, or terminate the bonus plan at any time. *Id.* Consulting Michigan law, the

---

[4] The court forewarned the Debtors numerous times at the evidentiary hearing that the only record of Mr. Scotchel postpetition legal services was from Mr. Regan's testimony — who testified that he had no knowledge of anything Mr. Scotchel did to advance the Falls Case in 2012. The only evidence the Debtors offered to rebut Mr. Regan's testimony was an affidavit from Mr. Bordas. The only postpetition service Mr. Bordas attested to was Mr. Scotchel making hotel reservations in Wheeling, West Virginia. Mr. Bordas attested that Mr. Scotchel had a "duty" to prepare as a witness and had "continuing attorney-client duties" to Ms. Falls; significantly, however, he did not state whether Mr. Scotchel performed these duties. Mr. Scotchel's duties postpetition are irrelevant; the court is concerned with actually performed legal services.

6

court found that an employee who ends his employment before the closing date of a bonus period forfeits eligibility for the bonus. *Id.* at 208. The court held that the bonus was not property of the debtor's bankruptcy estate because he had no "enforceable right to receive the bonus check" when he filed for bankruptcy. The linchpin of the *Sharp* holding appears to be that if an "employee's interest in the bonus was a mere expectancy," it should not become property of the bankruptcy estate. *In re Dittmar*, 618 F.3d 1199, 1209 (10th Cir. 2010).

The facts of *Sharp* are in marked contrast to this case. Unlike *Sharp*, the Falls Case contingent fee contract does not leave any discretion to Ms. Falls to decide whether to pay her attorneys; if the case comes to a successful conclusion, the contract provides for mandatory division of the award. She is not provided with an unfettered right to suspend or withhold payment. Thus, Mr. Scotchel's contingent fee contract is not a mere expectancy based on the discretion of a third-party. Furthermore, West Virginia law provides that Mr. Scotchel held a legally enforceable right in the contingent fee contract when he filed bankruptcy. *Sharp*, 253 B.R. at 208 (acknowledging that the bonus dividend would have been a legal interest of the debtor and property of the estate if Michigan law provided that an employee had an enforceable right in bonus dividends before payment). Additionally, even if the facts in *Sharp* were similar, the court declines to follow its holding because the *Sharp* court seems to constrict § 541(a)(1) by excluding contingent interests from the bankruptcy estate. *Booth v. Vaughan, (In re Booth)*, 260 B.R. 281, 289-90 (B.A.P. 6th 2001) (observing that the holding in *Sharp* "would exclude all contingent interests from the bankruptcy estate, because by definition, a contingent interest is not 'enforceable' until the contingency is met"). Reading *Sharp* to exclude all contingent interests is "inconsistent with the multitude of cases holding contingent interests to be property of the estate in a wide variety of circumstances." *In re Edmonds*, 263 B.R. 828, 830 (E.D. Mich. 2001); *see also In re Booth*, 260 B.R. at 289-90 (rejecting the reasoning and result of *Sharp*).

The Debtors also disagree that under West Virginia law Mr. Scotchel could bring an action to recover any fee on the theory of *quantum meruit* because the contingency did not occur until after he filed bankruptcy. Whether Mr. Scotchel could maintain an action in *quantum meruit* on the day he filed bankruptcy, however, "does not affect whether the prepetition earnings are property of the estate under section 541(a)." *In re Jess*, 215 B.R. 618, 622 (B.A.P. 9th 1997). His bankruptcy estate held the contingent contract right to receive property in the future. The argument of the Debtors also ignores the application of a hypothetical termination: If Mr.

Scotchel was fired on January 5, 2012 and another attorney successfully finished the case, he would be entitled to the reasonable value of his services performed before termination.

Finally, the Debtors assert that the Falls Case contingent fee agreement is an executory personal service contract which is neither assumable nor assignable. The court agrees that the Falls Case contingent fee contract is an executory contract, but whether such a contract is executory, or assumable by the Trustee, or even property of the estate, does not address whether the bankruptcy estate is entitled to any fees for prepetition legal services. A trustee's ability to assume, as assets of the estate, contingent fee contracts where legal services remain due postpetition is discernibly different than a trustee's ability to bring into the bankruptcy estate "the fees generated by a debtor-attorney in the completion of contingent fee contracts in which some of the work occurred prior to filing the bankruptcy petition." *Watts v. Williams (In re Watts)*, 154 B.R. 56, 58 (S.D. Tex. 1993). The court therefore rejects the Debtors argument because whether a contingent fee contract is assumable under § 365 "has no bearing on whether a debtor's right to future payment under the contract is property of the estate." *In re Bagen*, 186 B.R. at 829; *see e.g.*, *In re Avery*, 947 F.2d at 774 ("[W]e hold that the contingent fee contracts at issue, as executory contracts, do not fall into the bankruptcy estate, but that fees earned thereon prior to the date of the filing of the bankruptcy petition do."); *In re Watts*, 154 B.R. at 57 (agreeing with *In re Avery* that the value of a debtor-attorney's services rendered prepetition under an executory contingent fee contract is property of the estate).

## CONCLUSION

The Debtors position is not only untenable under the Bankruptcy Code, but would also have serious policy implications. Adopting the Debtors position would permit attorneys working on a contingent fee basis to file bankruptcy petitions on the eve of settlement and then, postpetition, claim the entire fee for themselves. Such an adoption would ignore patent economic realities and contravene the intent of the Bankruptcy Code. *See Bagen*, 201 B.R. at 644 ("The Bankruptcy Code intends to recognize economic realities, and the economic realities are that the work already done on open [contingent fee] cases had an economic value at the time of the filing of the petition . . . ."); *see also In re Tully*, 202 B.R. 481, 485 (B.A.P. 9th Cir. 1996).

For the above-stated reasons, the court finds that Mr. Scotchel's entire fee of $690,000 is property of the Debtors' bankruptcy estate. A separate order will be entered contemporaneously with this Memorandum Opinion pursuant to Fed. R. Bankr. P. 9021.